IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORRIE CUNNINGHAM, as Special Administrator of the Estate of HANSEL CUNNINGHAM, III, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> TASER INTERNATIONAL, INC., a corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.  07 C 6927

Judge Marvin E. Aspen

Magistrate Judge Morton Denlow

Removed from the Circuit Court of Cook County, Illinois, Law Division Case No. 07 L 013054

## DEFENDANT TASER INTERNATIONAL, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO ILLINOIS STATE COURT

Defendant, TASER International, Inc., ("TASER Int'l"), by its attorneys, files

its Response in Opposition to Plaintiff's Motion to Remand Case to Illinois State

Court, and states as follows:

### INTRODUCTION

On November 17, 2006, Plaintiff filed an action against the City of Des

Plaines, Illinois ("Des Plaines") and Rimland Services ("Rimland") in the Circuit

Court of Cook County, Illinois (the "Pending State Court Action"). *See* Plaintiff's

Motion to Remand ("Motion"), Ex. A.  In the Complaint, Plaintiff alleged that on

November 20, 2005, police officers from Des Plaines used a TASER® electronic

control device, among other things, on Hansel Cunningham, III (the "Decedent") at

Rimland's residential care facility resulting in his death.[1] Motion, Ex. A, ¶¶ 6-9. With respect to Des Plaines, Plaintiff alleged Des Plaines used excessive force in attempting to restrain Decedent, causing his death. *Id.*, Counts I & II, ¶¶ 7-11. Plaintiff's claims against Rimland arise out of its alleged negligent failure to monitor and care for Decedent, also causing his death. *Id.*, Counts III & IV, ¶ 9.

On November 19, 2007, more than one year later, Plaintiff filed a Complaint against TASER Int'l in the Circuit Court of Cook County, Illinois, in connection with Decedent's death. *See* Motion, Ex. B. In the Complaint, Plaintiff alleged claims against TASER Int'l for strict products liability and negligence. *See id.* On December 10, 2007, TASER Int'l removed the case to the United States District Court for the Northern District of Illinois, Eastern Division.

Plaintiff now seeks to strip TASER Int'l of its statutory right to have this case adjudicated in a federal forum. It is not because this Court does not have jurisdiction over this matter, as Plaintiff does not dispute that jurisdiction is proper on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. Rather, Plaintiff moves to remand this case to the Illinois state court because it seeks ultimately to consolidate this action with the Pending State Court Action.[2] In other words, Plaintiff is asking this Court to make an exception to its strict duty to exercise jurisdiction over this matter and abstain pursuant to the abstention doctrine annunciated in *Colorado River Water Cons. Dist v. United States*, 424 U.S.

---

[1] TASER is a registered trademark of TASER Int'l.

[2] It is not clear why Plaintiff did not seek leave to amend its Complaint against Des Plaines and Rimland to add TASER Int'l as a defendant.

800 (1976). In *Colorado River*, the Supreme Court held that a district court can abstain from hearing a case in deference to ongoing parallel state proceedings out of wise judicial administration only in exceptional circumstances. This case, however, is not one of those exceptional circumstances. This case is not parallel to the Pending State Court Action, as the issues and parties involved in both cases are substantially dissimilar.

In addition, Plaintiff's cause of action against TASER Int'l is legal, not equitable, in nature. As the Supreme Court authority cited by Plaintiff shows, it is inappropriate for the district court to remand an action based on abstention principles where the action is at law and not a matter of equity. Accordingly, Plaintiff's Motion to Remand should be denied.

TASER Int'l did not know, and had no reason to know, of the Pending State Court Action prior to Plaintiff filing this action. Plaintiff alerted TASER Int'l to the Pending State Court Action for the first time in her Motion to Remand. If Plaintiff would have added TASER Int'l as a party to the Pending State Court Action, TASER Int'l would not have labored over removing the action to this Court. Accordingly, if this Court determines that this case exemplifies an exceptional circumstance that warrants abstention and remand, TASER Int'l requests all of the attorneys' fees and costs it has incurred in connection with its removal of the action and Plaintiff's Motion to Remand.

## ARGUMENT

I.    **Plaintiff has not shown that the circumstances of this case are exceptional to warrant abstention and remand.**

As Plaintiff acknowledges, federal courts have an "unflagging obligation" to exercise the jurisdiction that is conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). That is why "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)); *see also, AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (The Supreme Court "has cautioned that abstention is appropriate only in exceptional circumstances. . . ."). In light of these well-established principles, the Seventh Circuit has recognized a general presumption against abstention. *Id.*

A.    **This Court should not abstain from exercising jurisdiction and remand this action to the Illinois state court because Plaintiff's action is at law.**

As an initial matter, Plaintiff should be precluded from seeking a remand of this action to Illinois state court because her claims are legal in nature. As the Supreme Court authority cited by Plaintiff shows, federal courts have the power to remand cases based on abstention principles only in actions where the relief sought by the plaintiff "is equitable or otherwise discretionary." *Quackenbush*, 517 U.S. at 731. The *Quackenbush* Court overturned the district court's remand order because

4

the plaintiff was seeking damages. *Id.* The Supreme Court held that although abstention principles may allow a federal court to stay actions for damages in certain circumstances, they do not "support the outright dismissal or remand of damages actions." *Id.* at 721; *see also, In re United States Brass Corp.*, 110 F.3d 1261, 1266 (7th Cir. 1997) ("[A]bstention, being an equitable doctrine, can never be invoked in a suit for damages.").

Plaintiff's action against TASER Int'l is purely an action at law. Plaintiff has alleged two claims for wrongful death, one based on strict liability (Count I) and the other based on negligence (Count III). *See* Motion, Ex. B, pp. 1, 9. Plaintiff also alleges two survival claims, one based on strict liability (Count II) and the other based on negligence (Count IV). *Id.* at pp. 5, 13. Plaintiff seeks only to recover monetary damages for these claims. *Id.* at pp. 5, 9, 12-13, 16. Accordingly, Plaintiff's Motion to Remand should be denied.

B.    *Colorado River* abstention principles do not apply to this case.

Even assuming the *Quackenbush* decision does not preclude a remand, Plaintiff still fails to show that this case is an exceptional circumstance warranting abstention and remand to the Illinois state court. Plaintiff argues that remanding this case to the Illinois state court will eliminate concurrent jurisdiction, prevent duplicative discovery in both cases and conserve judicial resources. Motion, p. 2. Plaintiff's reasons for remand, even assuming they are legitimate, are not exceptional to warrant abstention and remand.

Because of the federal court's strict duty to exercise jurisdiction, a pending state court action generally is no bar to a parallel action in a federal court having

jurisdiction. *Colorado River*, 424 U.S. at 817. Although the Supreme Court has allowed a federal court to abstain where there is a pending parallel action in another forum out of wise judicial administration, the circumstances for permitting a federal court to defer to a parallel state proceeding out of wise judicial administration "are considerably more limited than the circumstances appropriate for abstention." *Id.* at 817-18. "It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a state court could entertain it." *Id.* (quoting *Alabama Pub. Serv. Comm'n v. Southern R.R. Co.*, 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring)).

In deciding whether to abstain, the district court first must determine whether the federal and state court proceedings are parallel. *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). If the actions are not parallel, then the abstention doctrine does not apply and the case should not be remanded to the state court. *Id.* If the court finds the cases are parallel, the court then must weigh certain factors in determining whether the circumstances are exceptional to warrant abstention. *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 591-92 (7th Cir. 2005). Only the clearest of justifications for abstention will warrant a remand. *Colorado River*, 424 U.S. at 819.

      1.    **This action and the Pending State Court Action are not parallel.**

To determine whether the actions are parallel, the district court must evaluate whether "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l*, 250 F.3d at 518 (quoting

*Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). The

critical question the district court must ask is "not whether the suits are formally

symmetrical, but whether there is a substantial likelihood that the state court

litigation will dispose of all claims presented in the federal case." *Truserv*, 419 F.3d

at 592. In addition, the district court must determine whether the defendant may

be bound by the disposition of the state court action under collateral estoppel or *res*

*judicata*. *Harris Trust & Savings Bank v. Olson*, 745 F. Supp. 503, 507 (N.D. Ill.

1990). Bearing in mind the federal court's strict duty to exercise jurisdiction and

the exceptional nature of abstention, "any doubt regarding the parallel nature of the

state court suit should be resolved in favor of exercising jurisdiction." *Truserv*, 419

F.3d at 593 (quoting *AAR Int'l*, 250 F.3d at 520).

In the case at bar, it is not at all likely that the Pending State Court Action

will dispose of Plaintiff's claims against TASER Int'l. Plaintiff's claims against

TASER Int'l arise out of alleged defects in TASER Int'l's product which allegedly

were a proximate cause of Decedent's death. *See* Motion, Ex. B, ¶¶ 14-15. In the

Pending State Court Action, Plaintiff's claims against Des Plaines arise out of its

alleged use of excessive force in attempting restrain the Decedent (*see* Motion, Ex.

A, Counts I & II, ¶¶ 7-11), and Plaintiff's claims against Rimland arise out of its

failure to monitor and care for Decedent. *Id.*, Counts III & IV, ¶ 9. The claims in

each action present separate and distinct legal and factual issues. Regardless of

how Plaintiff's claims against Des Plaines and Rimland are resolved, the Pending

State Court Action will not dispose of, let alone address, Plaintiff's claims against

TASER Int'l. *See Truserv*, 419 F.3d at 593 (Because the state court litigation did not dispose of all the claims presented in the federal case, the two cases were not parallel); *Levin v. Daniels*, No. 97 C 6265, 1998 U.S. Dist. LEXIS 15945, *24 (N.D. Ill. Sept. 25, 1998) (The litigation in the state court case would not address the claims at issue in the federal case, as the cases involved different causes of action) (attached as Exhibit A); *Ludgate Ins. Co. Ltd. v. Becker*, 906 F. Supp. 1233, 1242 (N.D. Ill. 1995) (The action in the other forum was "largely unrelated to the one before us.").

In addition, the Pending State Court Action involves different defendants. TASER Int'l is not a party to the Pending State Court Action. Thus, there is no possibility for inconsistent judgments and for TASER Int'l to be bound by any ruling issued in the Pending State Court Action. *See Harris*, 745 F. Supp. at 507 (Because the state court proceeding consisted of completely different defendants, the federal defendant could "not be bound by the result in the state court proceeding under principles of res judicata."); *Ewing v. Tilden Commercial Alliance, Inc.*, No. 95 C 544, 1995 U.S. Dist. LEXIS 5337, *5 (N.D. Ill. April 21, 1995) (Abstention was improper because the parties in the two cases were not substantially similar) (attached as Exhibit B). This action and the Pending State Court Action are not parallel and, therefore, this Court should deny Plaintiff's Motion to Remand.

> 2.   **Even assuming the court finds the cases are parallel, a balancing of the relevant factors does not warrant a clear justification for remand.**

Even assuming this Court finds that this action and the Pending State Court Action are parallel, a balancing of the factors for determining whether to abstain

8

does not justify a remand of this case. In determining whether the circumstances are exceptional to warrant a remand, the Court must consider: 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *Truserv*, 419 F.3d at 592 n.2. No factor is dispositive, and the court must take into account its strict duty to exercise jurisdiction and the factors which counsel "against that exercise." *Colorado River*, 424 U.S. at 818-19; *see also*, *Schneider Nat'l*, 903 F.2d at 1156 (The court should "carefully balance" the factors "with the balance heavily weighted in favor of the exercise of jurisdiction.").

Ultimately, the case should turn on how seriously the court views its "admonition from the Supreme Court not to stay or dismiss actions without strong justification to do so." *AXA*, 347 F.3d at 279; *see also*, *Truserv*, 419 F.3d at 593 (noting the "remarkably difficult standard that must be met before we can refuse our 'virtually unflagging obligation' to exercise jurisdiction."). This heightened standard is particularly important in federal cases resting on diversity jurisdiction. *See Schneider Nat'l*, 903 F.2d at 1158. The Seventh Circuit has stated:

> [I]t is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy --

> in having two active lawsuits instead of one. That will
> always be possible when there is a parallel state suit
> pending. . . . But until Congress decides to alter or
> eliminate the diversity jurisdiction we are not free to treat
> the diversity litigant as a second-class litigant, and we
> would be doing just that if we allowed a weaker showing
> of judicial economy to justify abstention in a diversity case
> than in a federal-question case.

*Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982); *AXA*, 347

F.3d at 279 (recognizing the "traditional justification for diversity jurisdiction --

protecting foreign companies from potentially biased state courts. . . .").

An analysis of the relevant factors raises substantial doubt whether this case

should be remanded to the Illinois state court.  First, there is no inconvenience to

Plaintiff if this case is litigated here.  Plaintiff is a citizen of Illinois and both of

Plaintiff's actions are taking place in Chicago.  *See Rolls-Royce PLC v. Luxury*

*Motors, Inc.*, No. 03 C 5953, 2004 U.S. Dist. LEXIS 11077, *9 (N.D. Ill. June 17,

2004) (The Northern District was not an inconvenient forum, as both suits were

taking place in Chicago) (attached as Exhibit C).  Second, although the Pending

State Court Action was filed more than a year ago, it has not advanced significantly

further than this case.  Plaintiff admits that oral discovery has not even been taken

in the Pending State Court Action yet.  Motion, pp. 2-3.  Thus, this action is not far

behind the Pending State Court Action, a factor weighing against abstention.  *See*

*Enfra LLC v. Caporale*, No. 02 C 8856, 2003 U.S. Dist. LEXIS 9089, *13 (N.D. Ill.

May 30, 2003) (Although discovery had begun in the state court case, the case was

not nearing resolution or had any pending or imminent dispositive motions)

(attached as Exhibit D).  Third, the source of governing law does not favor

abstention. State tort law issues are not so complex that this Court cannot resolve them. *See In re Chicago Flood Litig.*, 819 F. Supp. 762, 766 (N.D. Ill. 1993) ("The presence of unremarkable state law issues, typical of most diversity cases, does not strongly support abstention."). For this reason, no rights of Plaintiff will go unprotected in the event this Court retains jurisdiction. This Court is just as capable of protecting Plaintiff's rights with respect to its state law claims as the Illinois state court. Thus, the sixth factor of whether state-court action can protect the federal plaintiff's rights also does not favor abstention.

Moreover, because the two actions are not related, whether the Court would avoid piecemeal litigation by retaining jurisdiction over this case is not a factor. *See Ludgate*, 906 F. Supp. at 1242-43 ("[S]ince the two suits are quite dissimilar, we would not avoid piecemeal litigation by staying our hand."). Other factors which are not relevant to this Court's analysis include whether the state has assumed jurisdiction over property and the vexatious or contrived nature of the federal claim. Overall, substantial doubt exists as to whether it would be appropriate for the Court to remand this case in favor of the Pending State Court Action. Any doubt regarding whether the two actions are parallel should be resolved in favor of exercising jurisdiction. *See Truserv*, 419 F.3d at 593. Accordingly, Plaintiff's Motion to Remand should be denied.

II.    **If this Court grants Plaintiff's Motion to Remand, TASER Int'l should be awarded its attorneys' fees and costs for removing the action to this Court.**

If Plaintiff would have added TASER Int'l as a party to the Pending State Court Action, TASER Int'l would not have labored over removing the action to this

Court. If TASER Int'l was joined as a defendant in the Pending State Court Action, any attempt by TASER Int'l to remove the action to federal court would violate the forum defendant rule under 28 U.S.C. § 1441(b), which prohibits removal when any party properly joined as a defendant is a citizen of the state in which the action has been brought. *See* 28 U.S.C. § 1441(b); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000). Des Plaines and Rimland reside in Illinois. Motion, Ex. A, ¶¶ 1-4. Indeed, Plaintiff admits that diversity jurisdiction would be defeated if the two actions were consolidated. Motion, p. 3. Plaintiff, however, did not alert TASER Int'l to the Pending State Court Action until she filed her Motion to Remand. TASER Int'l did not know, and had no reason to know, of the Pending State Court Action prior to Plaintiff filing her Motion to Remand. If Plaintiff wanted to bring suit against TASER Int'l in state court, she should have added TASER Int'l as a party to the Pending State Court Action.

A federal court can award attorneys' fees as a sanction against a party who acts in bad faith or whose conduct is vexatious. *See* 28 U.S.C. § 1927; *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) ("[A] district court has the inherent authority to impose sanctions against an attorney who has acted in bad faith."). This authority extends to frivolous motions to remand. *See, e.g., Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 430-31 (7th Cir. 1997); 16 *Moore's Federal Practice*, § 107.41[4][b] (Matthew Bender ed.). Plaintiff acted in bad faith by failing to add TASER Int'l as a party to the Pending State Court Action and failing to notify TASER Int'l of the Pending State Court Action prior to TASER

Int'l removing the action to this Court. Accordingly, if this Court determines that the circumstances of this case are exceptional to warrant abstention and remand, TASER Int'l requests all of its attorneys' fees and costs it has incurred in connection with its removal of the action to this Court and Plaintiff's Motion to Remand.

## CONCLUSION

For all of the foregoing reasons, TASER Int'l requests the Court deny Plaintiff's Motion to Remand. Alternatively, if the Court grants Plaintiff's Motion to Remand, TASER Int'l respectfully requests the Court award TASER Int'l all of its attorneys' fees and costs incurred in connection with its removal of the action to this Court and Plaintiff's Motion to Remand, and all other relief it deems fair and just.

Respectfully submitted,

/s/  James E. Michel

John R. Maley
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: john.maley@btlaw.com

David T. Ballard
James E. Michel
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646
E-mail: david.ballard@btlaw.com

Attorneys for Defendant
TASER International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2008, a copy of the foregoing **Defendant TASER International, Inc.'s Response in Opposition to Plaintiff's Motion to Remand Case to Illinois State Court** was filed electronically. Notice of this filing will be sent to the following attorneys by operation of the Court's electronic filing system, and, to those parties not receiving such notice, by U.S. Mail from One Wacker Drive, Chicago, Illinois. Parties may access this filing through the Court's system.

Richard F. Burke, Jr.
Shannon M. McNulty
Sean P. Driscoll
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street
31st Floor
Chicago, Illinois 60602


/s/ James E. Michel
James E. Michel

CHDS01 441394v1

# EXHIBIT A

LEXSEE 1998 US DIST LEXIS 15945

**SAMUEL G. LEVIN, Plaintiff, v. RICHARD C. DANIELS, RICHARD J. SMITH, JUNE PETERSON-GLEASON, SUE PATTON, a.k.a. SUE GIRARDI, and MARTHA CERVANTES, and SULLIVAN SMITH, HAUSER & NOONAN, LTD., a partnership, Defendants.**

**No. 97 C 6265**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1998 U.S. Dist. LEXIS 15945*

**September 24, 1998, Decided**
**September 25, 1998, Docketed**

**DISPOSITION:**   [*1] Defendants' motions to dismiss all counts of Plaintiff's Amended Complaint GRANTED. Any and all other pending motions denied as moot.

**COUNSEL:** For SAMUEL G LEVIN, plaintiff: Richard A. Halprin, Attorney at Law, Chicago, IL.

For SAMUEL G LEVIN, plaintiff: Judith Anne Halprin, Attorney at Law, Highland Park, IL.

For RICHARD C DANIELS, JUNE PETERSON-GLEASON, SUE PATTON aka Sue Girardi, defendants: Keevan David Morgan, Rakesh Khanna, Morgan & Bley, Chicago, IL.

For RICHARD C DANIELS, JUNE PETERSON-GLEASON, SUE PATTON aka Sue Girardi, MARTHA CERVANTES, defendants: Chester H. Foster, Jr., Foster & Kallen, Chicago, IL.

RICHARD C DANIELS, defendant, Pro se, Lake Forest, IL.

For RICHARD J SMITH, SULLIVAN SMITH, HAUSER & NOONAN LTD, defendants: David A. Novoselsky, Kevin S. Besetzny, David A. Novoselsky & Associates, Chicago, Il.

JUNE PETERSON-GLEASON, defendant, Pro se, Gurnee, IL.

SUE PATTON aka Sue Girardi, defendant, Pro se, Beach Park, IL.

For MARTHA CERVANTES, defendant: Keevan David Morgan, Morgan & Bley, Chicago, IL.

MARTHA CERVANTES, defendant, Pro se, Waukegan, IL.

For VICTOR O'BLOCK, deponent: Adam B. Simon, Lake County State's Attorney's [*2] Office, Waukegan, IL.

**JUDGES:** David H. Coar, United States District Judge.

**OPINION BY:** David H. Coar

**OPINION**

*MEMORANDUM OPINION AND ORDER*

   Before this court are three motions to dismiss Plaintiff Samuel G. Levin's ("Plaintiff") complaint, which alleges a RICO violation pursuant to *18 U.S.C. § 1962(c)* (Count I), a RICO violation pursuant to *18 U.S.C. § 1962(d)* (Count II), and four state law claims (Counts III-VI). Defendants Richard C. Daniels', ("Daniels"), June Peterson-Gleason's ("Peterson-Gleason"), Sue Patton's, a.k.a. Sue Girardi ("Patton"), and Martha Cervantes's ("Cervantes") (collectively "Daniels Defendants") two motions to dismiss seek to dismiss or stay this action under the *Colorado River* abstention doctrine, or, in the

alternative, to dismiss Counts I and II as failing to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)* and to dismiss Counts III-VI for lack of jurisdiction pursuant to *28 U.S.C. § 1367(c)(3)*, or, in the alternative, that the complaint violates *Fed. R. Civ. P. 12(e)*. Defendant Richard J. Smith's ("Smith") motion to dismiss seeks to dismiss or stay this action under the *Colorado River* doctrine and adopts the Daniels Defendants' 12(b)(6) challenge. [*3] For the following reasons, Defendants' motions to dismiss all counts of Plaintiff's Amended Complaint is GRANTED. This case is CLOSED..

**I. Standards**

**A. *Fed. R. Civ. P. 12(b)(1)***

The standard of review for a *Rule 12(b)(1)* motion to dismiss for lack of subject matter jurisdiction depends upon the purpose of the motion. *See Freiburger v. Emery Air Charter, Inc., 795 F. Supp. 253, 256 (N.D. Ill. 1992)*; *5A Wright & Miller, Federal Practice & Procedure: Civil.2d § 1363* at 456 (2d ed.1990) (hereinafter "*Wright & Miller*"). If the motion simply challenges the sufficiency of the allegations of subject matter jurisdiction, the court must accept as true all well-plead factual allegations and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western R. Co., 78 F.3d 1208 (7th Cir.1996) (citing Rueth v. EPA, 13 F.3d 227, 229 (7th Cir.1993))*; *5A Wright & Miller, § 1363* at 456.

If, however, the motion denies or controverts the truth of the jurisdictional allegations, the court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine [*4] whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir.1993)* (citations omitted). Under these circumstances, the allegations of the complaint are not controlling and are merely evidence on the issue. *See Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 277-79, 57 S. Ct. 197, 200-01, 81 L. Ed. 183 (1936))*; *5A Wright & Miller, § 1363* at 456, 457-58. Uncontroverted factual allegations are nevertheless accepted as true for the purposes of such a motion. *Cedars-Sinai Med. Ctr., 11 F.3d at 1583*. The court may weigh the evidence in order to satisfy itself that jurisdiction exists; as such, disputes over material facts will not preclude the court from deciding jurisdictional issues. [1] *Lumpkin v. United States, 791 F.*

*Supp. 747, 749 (N.D. Ill. 1992)*. Finally, where the court's jurisdiction has been controverted, "the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof." *Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979) (citing McNutt v. General Motors Acceptance [*5] Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936))*.

    1    The court must decide whether jurisdiction exists, not whether there is sufficient evidence to have a trial on the jurisdictional issue. *Crawford v. United States, 796 F.2d 924, 929 (7th Cir. 1986)*; *Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990)*.

**B. *Fed. R. Civ. P. 12(b)(6)***

A motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995)*. The court must accept as true all of plaintiff's well-pleaded factual allegations, as well as all reasonable inferences. *Id.* Thus, the court will dismiss a complaint under *Rule 12(b)(6)* only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford [*6] v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997)* (quoting *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984))*. However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint." *Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977)*.

**C. *Fed. R. Civ. P. 12(e)***

Under *Fed. R. Civ. P. 12(e)*, "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." *Rule 12(e)* "is designed to strike at unintelligibility rather than want of detail. If the pleading meets the requirements of *Rule 8* and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement will not be granted." J. Moore, A. Vestal, & P. Kurland, *Moore's Manual: Federal Practice and Procedure § 11.07[1]* at 11-68 (1997) (hereinafter "*Moore's Federal Practice*").

## II. Facts

Prior to May 1996, Mary DeSloover ("DeSloover") and Daniels maintained a law [*7] partnership organized as a corporate entity styled Richard C. Daniels and Associates, P.C., the successor to another entity called Daniels and Associates. (Amended Cpt. P 10.) Daniels and DeSloover had equally owned the firm. (Amended Cpt. P 10.) In April of 1996, DeSloover hired Plaintiff, an attorney in good standing, to represent her in the winding down of their professional corporation and to receive an accounting of corporate funds. (Amended Cpt. P 11.) On May 6, 1996, DeSloover filed a complaint in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois ("Circuit Court"); the case is entitled *Mary F. DeSloover, Plaintiff, v. Richard C. Daniels, et al., Defendants*, Case No. 96 CH 396 ("*DeSloover*"). (Amended Cpt. P 12.) On May 7, 1996, Levin appeared before Judge Peter Trobe, an associate judge in the Circuit Court. (Amended Cpt. P 13.) During those proceedings, the Court entered a Temporary Restraining Order against Daniels enjoining Daniels from using corporate funds for personal use. (Amended Cpt. P 13.) On May 20, 1996, Judge Trobe issued a preliminary injunction against Daniels, individually, and Daniels' law firm enjoining both from "transferring, [*8] assigning, disbursing, dissipating or otherwise hypothecating or wasting the assets of Daniels, individually, or the Daniels' law firm or from wrongfully appropriating them to Daniels, individually, the firm, and/or third parties, except that Daniels and his agents may make expenditure in the ordinary course of business only." (Amended Cpt. P 14.) The Circuit Court also ordered the appointment of a Receiver to account for and to manage Daniels and the firm's finances. (Amended Cpt. P 14.) While one of Daniels' attorneys did file a Motion to Dissolve or Modify Temporary Restraining Order, the TRO and preliminary injunction remained in place as of August 8, 1996. (Amended Cpt. PP 15-16.)

On August 8, 1996, DeSloover, Plaintiff, Joseph Footlik (an expert hired for DeSloover) and another attorney, Harold M. Saafeld, were present at the law offices of Daniels and DeSloover located at 19 N. County Street, Waukegan, Illinois. (Amended Cpt. P 17.) The purpose of their appearance was to make preliminary determinations as to the feasibility and/or possibility of partitioning off the office space which DeSloover and Daniels had a leasehold interest. (Amended Cpt. P 17.) Plaintiff had in his [*9] possession a Subpoena For Trial

for Peterson-Gleason which required her appearance for trial on September 3, 1996. (Amended Cpt. P 18.) Plaintiff left the group and went to that portion of the suites where Peterson-Gleason's law office was located. (Amended Cpt. P 18.) Levin asked Cervantes, a secretary in the office, if he could see Peterson-Gleason. (Amended Cpt. P 18.) Peterson-Gleason may have responded that Plaintiff could make an appointment. (Amended Cpt. P 18.) Cervantes then opened the door of Peterson-Gleason's office. (Amended Cpt. P 18.) Present in Peterson-Gleason's office were Carmen Ortiz Foltz ("Ortiz"), Ortiz's sister Lourdes Colon ("Colon"), Patton, and Peterson-Gleason. (Amended Cpt. P 18.) Ortiz, accompanied by her sister, was meeting with Peterson-Gleason for the purpose of discussing certain aspects of her divorce. (Amended Cpt. P 18.) When Cervantes opened the door in Peterson-Gleason's office, Plaintiff stood behind her and handed the trial subpoena to Peterson-Gleason, which she took. (Amended Cpt. P 18.) Plaintiff immediately left and rejoined the group that still consisted of DeSloover, Saafeld, and Footlik, who were then in the lower level of the suite. [*10] (Amended Cpt. P 18.) Shortly after Plaintiff's return to the group, Smith, an attorney with the Sullivan Smith law firm, accompanied by Daniels and Joseph E. Polenzani ("Polenzani"), an attorney also with the Sullivan Smith law firm, came down the stairwell to the basement area and announced to Plaintiff that Smith was now Daniels' attorney in the *DeSloover* case. (Amended Cpt. P 19.) Smith objected to Plaintiff's service of the trial subpoena on Peterson-Gleason when clients were present. (Amended Cpt. P 19.) Smith then objected "in a bellicose manner" to the group's presence on the premises. (Amended Cpt. P 19.)

Plaintiff alleges that on August 8, 1996, Daniels, Smith, and Peterson-Gleason devised a scheme principally consisting of Daniels, Smith, and Peterson-Gleason, who agreed that they would direct and instruct Cervantes to file false police reports accusing Plaintiff of battery. (Amended Cpt. P 20.) Plaintiff alleges that Patton, a paralegal in Daniels' office, agreed that she would recruit her friend Colon to file a false police report for battery and also provide the police with a false report in which she purported to be witness to the events underlying the battery. (Amended [*11] Cpt. P 20.) Plaintiff alleges that the lawyer conspirators assumed that Patton would also be able to prevail on her friend Colon to have Colon's sister Ortiz, who was pregnant at the time, also file a police report. (Amended Cpt. P 20.)

1998 U.S. Dist. LEXIS 15945, *11

As part of the alleged agreement, on or about August 9, 1996, Colon attended a meeting at Daniels' law office, with Daniels, Peterson-Gleason, Patton, and Cervantes; this meeting was conducted in part by Daniels who, during this meeting, informed each of the respective participants as to what they needed to say in order to sustain battery charges. (Amended Cpt. P 20.) Specifically, Daniels created and orchestrated the facts which underline the false charges brought against Levin. (Amended Cpt. P 20.)

According to this alleged scheme, Plaintiff's arrest would require him to withdraw as counsel for DeSloover. (Amended Cpt. P 21.) Simultaneous with Plaintiff's withdrawal from the DeSloover case, Daniels, by and through his attorney Smith, would request the Circuit Court to vacate the preliminary injunction obtained by Plaintiff on behalf of DeSloover. (Amended Cpt. P 21.) According to the scheme, Plaintiff's and DeSloover's credibility, motives, and intentions [*12] would be circumspect due to the heinous nature of the battery charges. (Amended Cpt. P 21.) In the end, according to their scheme, the injunction against Daniels would be removed to the benefit of Daniels and the detriment of DeSloover. (Amended Cpt. P 21.) Pursuant to their illegal agreement, Peterson-Gleason, Cervantes, Patton, and Colon filed false police reports with the Waukegan Police Department on August 9, 1996. (Amended Cpt. P 22.) On August 13, 1996, Peterson-Gleason and Cervantes spoke to a Waukegan Police Department detective and informed the police that Peterson-Gleason and her clients wished to proceed with battery charges. (Amended Cpt. P 23.) On August 15, 1996, the State's Attorney's Office for Lake County, Illinois, filed charges against Plaintiff in a case styled *People of the State of Illinois v. Samuel G. Levin*, No. 96 CM 4843 ("*People v. Levin*"), brought in the Circuit Court of the Nineteenth Judicial Circuit, Waukegan, Lake County, Illinois. (Amended Cpt. P 24.) Plaintiff was charged in an Information with five counts of criminal misdemeanor battery; in four of the five counts charged in the Information, the alleged victims were Colon and Ortiz. (Amended [*13] Cpt. P 24.) In defending himself, Plaintiff successfully advanced the defense that Plaintiff and others, including DeSloover, Colon, Ortiz, and the Circuit Court, are victims of a conspiracy to commit repeated frauds on the Circuit Court to gain a financial and strategic advantage in *DeSloover*. (Amended Cpt. P 25.)

*People v. Levin* was terminated by the Lake County

State's Attorney in July, 1997, by *nolle prosequi*. (Amended Cpt. P 26.) The Lake Count State's Attorney dismissed the charges against Plaintiff based on the following facts:

In an interview with Peter McCabe ("McCabe"), Plaintiff's criminal attorney, Ortiz denied under oath that Levin battered anyone in Peterson-Gleason's office on August 8, 1996. (Amended Cpt. P 27A.)

Ortiz also testified that she was contacted by telephone approximately one week after August 5, 1996 by Colon and Patton, who told her that "they want me to make a complaint" against Plaintiff, in which it was suggested that Ortiz would say Levin "was hurting me, pushing us." Ortiz refused their request because "it's a lie." Ortiz never provided the Waukegan Police Department with any statement regarding the events of August 8, 1996. [*14] When Ortiz was interviewed on May 13, 1997 by an investigator assigned to the Lake County State's Attorney's Office, Ortiz confirmed that "At no time was she pushed or shoved while in the office" of Peterson-Gleason. (Amended Cpt. P 27B.)

McCabe also obtained from Ameritech (through a subpoena duces tecum) copies of telephone records relating to a phone number assigned to the Daniels' law office in 1996 ("Daniels number"). These records indicate that two telephone calls were made on August 15, 1996 from the Daniels number to the residence of Ortiz and her fiance Peter Falk in Kenosha, Wisconsin. (Amended Cpt. P 27C.)

McCabe also interviewed Colon several times over the telephone. In those telephone conversations, Colon recanted the charges she made against Plaintiff in a written statement given to the Waukegan Police Department. Colon stated on March 10, 1997: she was present in

1998 U.S. Dist. LEXIS 15945, *14

Peterson-Gleason's law office on August 8, 1996; Levin did not touch Cervantes, Colon, or Ortiz; that the written statement that she gave the Waukegan Police Department relating to Plaintiff's alleged battery was false; that Colon asked Peterson-Gleason if she would represent Colon in a dispute she [*15] had with General Motors Acceptance Corporation; that Peterson-Gleason indicated that she would consider representing Colon in that dispute for free; that Patton asked Colon to sign a police report alleging that Plaintiff had "battered" her; that Colon signed the false police report because Patton was her friend and because Peterson-Gleason had stated that she would represent Colon for free; and that Peterson-Gleason eventually reneged on her agreement to represent Colon for free. (Amended Cpt. PP 27D-E.)

Shortly before the trial in *People v. Levin* was to begin, McCabe again interviewed Colon, who stated that Daniels was present in the room at Daniels' law office where Colon prepared her August 9, 1996 statement to the Waukegan Police and that Daniels made suggestions to her, as well as to the other witnesses in the room, as to what facts should be included in her statement and what facts should not be included in her statement. (Amended Cpt. P 27F.)

Also on August 9, 1996, pursuant to the agreement, Smith in the scope of his employment as a partner with the Sullivan Smith law firm wrote two letters to Plaintiff which in whole or in part alludes to the false police reports and [*16] also obtained copies of the false police reports on the date that they were written. (Amended Cpt. P 29.) On or about August 13, 1996, Smith and Daniels mailed, faxed, and filed the following papers in *DeSloover*: Motion for Issuance of Rule to Show Cause, Or In the Alternative For Entry of An Order Governing Contact Between the Parties and Prospective Witnesses and Counsel ("Show Cause Motion") and a Motion For Leave to File a Counterclaim. ("Counterclaim Motion") (Amended Cpt. P 30.) Paragraph 1 of the Show Cause Motion states:

On Tuesday, August 8, 1996, counsel for plaintiff entered the offices of Richard Daniels at approximately 4:20 p.m. and physically forced his way into the office of one of Mr. Daniel's employees, an attorney, striking one client, and propelling her into another who was seven months pregnant and a cancer patient. He then gave the attorney a subpoena for trial on September 3, 1996 and a check. Mr. Levin acted in spite of the receptionist attempting to stop him. (Statements to the Waukegan Police Department are attached).

(Amended Cpt. P 30A.) Counterclaim Motion, P 27 reads as follows:

Mary DeSloover caused her attorney to enter the [*17] law offices of Richard Daniels on or about August 8, 1996 push his way past the receptionist who told him not to enter an attorney's office, opened the door physically striking one client who was propelled into another and entered the office of an attorney employed by Richard Daniels, who was conferring with clients of Richard Daniels and there made a display of serving that attorney with a trial subpoena returnable on September 3, 1996, all in a breach of the peace and with physical violence.

(Amended Cpt. P 30B.) Smith signed the Counterclaim in his capacity as a partner of Sullivan Smith, and Daniels signed an attached, notarized affidavit which stated that he had knowledge about the matters contained in the Counterclaim and would testify that the matters stated were true. (Amended Cpt. P 30.)

On August 19, 1996, as a result of the filing of the false battery charges, Plaintiff was forced to withdraw as an attorney for DeSloover in the civil action. (Amended Cpt. P 31.) On the day that Plaintiff was forced to withdraw, he attended Circuit Court with a partner from his firm; Smith told that partner that Smith was hired by Daniels to get Plaintiff "out of this case." (Amended [*18] Cpt. P 32.) Because of being forced to withdraw from the case, Plaintiff lost the DeSloover account, suffered damages in having to investigate and defend

against Defendants, and suffered harm to his reputation and good name. (Amended Cpt. P 32.) Plaintiff also alleges injury to DeSloover because Defendants' actions gave Daniels a significant advantage in the civil case and because the Circuit Court, as a result of Defendants' actions, vacated the TRO, Preliminary Injunction, and the appointment of a Receiver and also barred DeSloover's access to the premises of the law firm that she had shared with Daniels. (Amended Cpt. P 33.)

Plaintiff alleges two Enterprises, Enterprise A (Smith, Sullivan Smith, Daniels, Daniels' law firm, and their respective attorneys and agents, including Peterson-Gleason, Patton, and Cervantes) and Enterprise B (the Circuit Court) through which Enterprise A acted. (Amended Cpt. PP 34-38.) Plaintiff alleges that the enterprise exists "for the purpose of filing false statements against Mr. Levin and otherwise encourage the Lake County State's Attorney's Office to bring false criminal charges against Mr. Levin so that he would have to withdraw as counsel for Ms. [*19] DeSloover in the *DeSloover v. Daniels* action. The enterprise also recruits its clients for the purpose of engaging in criminal activity." (Amended Cpt. P 35.) Plaintiff states that the "enterprise has operated through, among other things, correspondence, telephone conversations and facsimile transmissions between and amongst various persons and other entities located in the United States and, as such, clearly has affected and continues to affect interstate commerce." (Amended Cpt. P 37.) Plaintiff also alleges that "Defendants and possibly others conducted, and continue to conduct, the affairs of the enterprise through a pattern of racketeering activity," including "numerous acts of bribery, extortion, obstruction of justice, perjury, subornation of perjury, mail fraud and wire fraud on the various injured parties, including Mr. Levin" as part of "a coordinated effort . . . to gain an immediate advantage in the *DeSloover v. Daniels* civil action by effectuating the arrest of Mr. Levin and the forced withdrawal of Mr. Levin as Ms. DeSloover's counsel." (Amended Cpt. P 39.) Plaintiff alleges that the racketeering continued through March 27, 1997, when Peterson-Gleason and Patton [*20] each gave a sworn statement "in which they denied ever making any telephone calls to Ms. Ortiz asking her to make a statement against Mr. Levin." (Amended Cpt. P 40.) Plaintiff alleges that these actions post a threat of continued criminal activity. (Amended Cpt. P 41.) Finally Plaintiff alleges that the damages he has suffered "have been caused both by the predicate acts of the Defendants, and by the scheme itself, the entire

goal of which, as set forth in detail above, was to file false criminal charges against Mr. Levin and facilitate the prosecution of Mr. Levin by the Lake County State's Attorney's Office." (Amended Cpt. P 42.)

## III. Analysis

### A. Abstention

"Federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S. Ct. 927, 936, 74 L. Ed. 2d 765 (1983) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976)). Notwithstanding this duty, a court may abstain from exercising its jurisdiction in certain, narrowly construed circumstances. *Id.*

The Supreme Court has [*21] identified four general categories of circumstances in which abstention may be appropriate: first, "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law, *Colorado River*, 424 U.S. at 814, 96 S. Ct. at 1244 (citations omitted); second, where a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.*; third, "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, . . . state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, . . or collection of state taxes," *id.* at 816, 96 S. Ct. at 1245; and fourth, where there are parallel state-court proceedings and principles of wise judicial administration warrant such a decision. *Id.* at 818, 98 S. Ct. at 1246.

The circumstances in which a court may abstain due to a parallel state-court proceedings are "considerably [*22] more limited" than the circumstances appropriate for abstention under one of the other three general categories. *Colorado River*, 424 U.S. at 818, 96 S. Ct. at 1246. The court's first task is to determine whether the concurrent state and federal actions are actually parallel. *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). Parallel suits need not be identical suits. *Id.* Rather, actions are "parallel" when "substantially the same parties are contemporaneously

litigating substantially the same issues in another forum." *Id.* (quoting *Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988). accord LaDuke v. Burlington Northern R.R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989).* Once the court has determined that the actions are parallel, it must then consider the following ten (10) factors to determine whether it should refrain from its exercising jurisdiction:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the [*23] source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Behnke Warehousing, Inc., 962 F.2d at 701.* "The weight given to any one factor may vary from case to case, depending on the particular setting of the case." *Moses H. Cone Memorial Hosp., 460 U.S. at 16, 103 S. Ct. at 937.*

The court finds that it would be inappropriate either to stay this case or to dismiss it on the basis of the case of *DeSloover v. Daniels,* 96 CH 396 in the Circuit Court of the Nineteenth Judicial Circuit, in Lake County, Illinois. The judge in *DeSloover* struck P 27 of Daniels' counterclaim which was filed by Smith and Daniels and which relates to the alleged battery at issue in this case (Ptf's Resp. Ex. II (*DeSloover* 8/11/97 Order); in striking the allegations, the judge noted: "These allegations are not necessary to the cause of action. Additionally proof of them would require, substantially, a separate trial." [*24] *Id.* Thus, these cases, while tangentially related, are separate. Additionally, the litigation in *DeSloover* will not address the claims at issue in this case. [2] Accordingly, Defendants' motions are DENIED as to the request for a stay or dismissal pursuant to *Colorado River.*

> 2  The court doubts that Illinois courts would find that Plaintiff's claims were precluded by Illinois case law. "Under the doctrine of res judicata, a

final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Torcasso v. Standard Outdoor Sales, Inc., 157 Ill. 2d 484, 490, 626 N.E.2d 225, 228, 193 Ill. Dec. 192 (1993).* Not only does the Lake County action involve a different party, but it involves a different cause of action. *See id.* ("A cause of action consists of a single group of facts giving the plaintiff a right to seek redress for a wrongful act or omission of the defendant. Although a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute by a single cause of action."; "If the same facts are essential to maintain both proceedings or the same evidence is necessary to sustain the two, there is identity between the causes of action asserted, and res judicata bars the latter one."). The judge's statements in striking the battery allegations indicate that the battery claims arise from different facts than do the claims in *DeSloover* and, thus, that the two cases involve different causes of action.

[*25] **B. Rule 8**

The court cannot agree with Defendants that dismissal of Plaintiff's Amended Complaint is appropriate under *Rule 8.* As the Seventh Circuit has stated, "Under *Rule 8,* a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 775 (7th Cir. 1994).* While Plaintiff's Amended Complaint is not a model of brevity, neither does it approach the extremes of the complaint in *Vicom,* which the Seventh Circuit described as a "119-page, 385-paragraph less-than-coherent amended complaint." *Id. at 775.* Plaintiff has set forth in chronological fashion the basis of his claim, with specific reference to dates and documents and clearly outlining what each Defendant is accused of doing, rendering Defendants and this court able to comprehend and evaluate his claims.

**C. Rule 12(b)(6)**

The court GRANTS Defendants' motion for dismissal pursuant to *Rule 12(b)(6)* because Plaintiff has failed to allege facts showing a pattern of racketeering activity. Plaintiff has alleged a *§ 1962(c)* claim (Count I) [*26] and a derivative *§ 1962(d)* claim (Count II). "A RICO plaintiff alleging a violation of *§ 1962(c)* must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Vicom, 20 F.3d at 778* (quoting *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985))*. A "pattern of racketeering activity" is established by demonstrating that Defendants committed at least two predicate acts which are related, i.e., "'embraces the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing circumstances and are not isolated events,'" *H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240, 109 S. Ct. 2893, 2901, 106 L. Ed. 2d 195 (1989)* (quoting *18 U.S.C. § 3575(e))*, and "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *Id. See also Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1048 (7th Cir. 1998)* ("[A] RICO plaintiff . . . must show continuity plus relationship with respect to the alleged predicates.").

Plaintiff's claims fail on the "continuity" element of the "continuity plus relationship" [*27] test. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc., 492 U.S. at 241, 109 S. Ct. at 2902. See also Corley, 142 F.3d at 1048-49* (discussing closed-ended continuity and open-ended continuity). Continuity is "centrally a temporal concept," and the Supreme Court has emphasized that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc., 492 U.S. at 242, 109 S. Ct. at 2902.* To demonstrate closed-ended continuity, Plaintiff must offer proof of "a series of related predicates extending over a substantial period of time." *Corley, 142 F.3d at 1048.* The Seventh Circuit analyzes closed-ended continuity by the test first stated in *Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986). Corley, 142 F.3d at 1049* (discussing *Morgan* test); *Vicom, 20 F.3d at 780* (same); *Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1024 (7th Cir. 1992)* (same). The *Morgan* test comprises five factors: (1) "the number [*28] and variety of predicate acts"; (2) "the length of time over which [the predicate acts] were committed"; (3) "the

number of victims"; (4) "the presence of separate schemes"; and (5) "the occurrence of distinct injuries." *Corley, 142 F.3d at 1049* (quoting *Morgan*). To demonstrate open-ended continuity, Plaintiff must demonstrate either that "(1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Id.* (quoting *Vicom*).

The court finds that the proper framework for continuity in this case is the closed-ended continuity framework. While Plaintiff has stated certain conclusory allegations regarding the risk of future wrongdoing by the alleged enterprise, Plaintiff has not alleged any of the three forms of open-ended continuity; in fact, Plaintiff states that the express purpose of the alleged RICO scheme was to falsely accuse Plaintiff in particular in order to force him to withdraw from a specific case in which Defendants took a particular interest. There [*29] are no claims that the alleged wrongdoings bear a specific risk of recurrence, nor are there any allegations that tend to show that the alleged wrongdoings are either a "regular way" of conducting a lawful business or being performed by an unlawful business, i.e., "a long-term association that exists for criminal purposes." *See McDonald v. Schencker, 18 F.3d 491, 498 (7th Cir. 1994)* (rejecting open-ended continuity claim that wrongdoing allegedly occurring as part of a trial will continue "indefinitely" to the end of the trial.)

Considering the five *Morgan* factors, the court finds that Plaintiff has failed to demonstrate "closed-ended continuity." First, both the number and variety of predicate acts are quite limited. Plaintiff alleges two instances of wire fraud, both of which took place on the same day, the filing of five false police reports, and the filing of two allegedly inflammatory and false legal motions, all of which deal solely with the false battery claims against Plaintiff. Second, the duration [3] of the alleged scheme is quite short. Plaintiff alleges a single scheme "to file false criminal charges against Mr. Levin and facilitate the prosecution of Mr. Levin [*30] by the Lake County State's Attorney's Office." (Amended Cpt. P 43.) The ultimate goal of this scheme was "to have Mr. Levin and his firm removed from the *DeSloover v. Daniels* civil action; and (2) to vacate the injunctions and appointment of a Receiver." (Amended Cpt. P 44.) This scheme lasted only a matter of weeks, as the alleged

battery occurred on August 8, 1996 and Plaintiff withdrew as an attorney for DeSloover on August 9, 1996. Even if this court considered the alleged perjured statements made on March 27, 1997 as part of the scheme, [4] the duration of the scheme is sufficiently short to put Plaintiff's RICO claim in serious doubt. *See, e.g., H.J.*, 492 U.S. at 242, 109 S. Ct. at 2902 (stating that "a few weeks or months" is too short a period); *Corley, 142 F.3d at 1049* ("If the predicate acts of racketeering were addressed only to a single victim for a closed-ended period of twelve to fourteen months, we would agree that Corley would have considerable difficulty satisfying the 'continuity' requirement.'"); *Vicom, 20 F.3d at 780* (stating that "a time frame of less than nine months likely does not satisfy the duration requirement"); *420 East Ohio Limited Partnership* [*31] *v. Cocose, 980 F.2d 1122, 1125 (7th Cir. 1992)* ("We do not believe six months qualifies as the 'substantial period of time' referred to in *H.J. Inc.* . . . . This does not mean a six-month period is automatically 'too short'; however, six months is not long enough to allow a court to automatically infer the requisite continuity."). *Midwest Grinding, 976 F.2d at 1024* (rejecting closed-ended continuity where duration was "at most, nine months"). Third, there was a small, limited group of victims: Plaintiff and DeSloover. [5] Fourth, there was one scheme, limited to the goal of removing Plaintiff from DeSloover's case in order to gain a competitive advantage in the *DeSloover* lawsuit. Fifth, there were limited types of damages, i.e., competitive and business losses allegedly incurred by Plaintiff and DeSloover when Plaintiff was forced to withdraw from DeSloover's case and reputational damages to Plaintiff.

> 3    "Duration 'is perhaps the closest thing we have to a brightline continuity test.'" *Vicom, 20 F.3d at 780* (quoting *Midwest Grinding*).
> 4    The Seventh Circuit has suggested that it is inappropriate to extend the duration of an alleged RICO scheme by considering acts taken to hide misconduct, e.g., giving false deposition testimony. *Midwest Grinding, 976 F.2d at 1024.*
> [*32]
> 5    Plaintiff alleges that the Circuit Court is an additional victim of the scheme. As a matter of justice, this may (if Plaintiff's allegations are true) be correct. But, in addition to the odd fact that Plaintiff has also alleged that the Circuit Court is Enterprise B, through which Enterprise A worked, Plaintiff has not alleged that the Circuit Court

suffered any RICO damages.

In the end, this is a case dealing with a "single, short-term goal" which "does not 'amount to or threaten long-term criminal activity' that is targeted by the RICO pattern requirement." *Olive Can Co., Inc. v. Martin, 906 F.2d 1147, 1152 (7th Cir. 1990).*

Plaintiff's *§ 1962(d)* claim also must fail. "*Section 1962(d)*'s target is the agreement to violate *§ 1962(a), (b),* or *(c)* through a pattern of racketeering activity, not the predicate acts or the substantive RICO violations themselves. . . . Conclusory allegations of a conspiracy are not sufficient to state a claim under *§ 1962(d)*; rather, the plaintiff must allege facts from which each defendant's agreement to violate RICO can be inferred." *Chapman v. Ontra,* [*33] *Inc., 1997 U.S. Dist. LEXIS 8331, *26-27, 1997 WL 321681, *8 (N.D. Ill. 1997).* "In order to conspire to violate RICO, a conspirator must agree to two things: first, he must agree to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity; and second, he must agree to the commission of at least two predicate acts." *Bajorat v. Columbia-Breckenridge Development Corp., 944 F. Supp. 1371, 1382 (N.D. Ill. 1996)* (citing *Gagan v. American Cablevision, Inc., 77 F.3d 951, 961 (7th Cir.1996)).* "To allege a conspiracy to violate RICO under *section 1962(d)*, therefore, plaintiffs must allege at least three things: (1) that each defendant agreed to conduct the affairs of an enterprise; (2) that each defendant agreed to the commission of at least two predicate acts; and (3) that each defendant knew that those predicate acts were part of a pattern of racketeering activity." ( *Schiffels v. Kemper Fin. Servs., Inc., 978 F.2d 344, 352 (7th Cir.1992)*). Like in *Bajorat*, Plaintiff has merely alleged "an agreement to commit . . . a state tort," such that his allegations "do not concern an agreement to violate RICO, a federal criminal statute." *Id.* "There are no allegations from [*34] which the court can infer that each defendant agreed to conduct the affairs of an enterprise through a pattern of racketeering activity or that each defendant agreed to the commission of at least two predicate acts." *944 F. Supp. at 1383.* Additionally, as the court has found that Plaintiff has failed to allege the existence of a pattern of racketeering activity, the court cannot presume from the existence of a group of people allegedly committing misdeeds that that group of people agree to engage in a pattern of racketeering activity. Accordingly, dismissal of Counts I and II (RICO) is appropriate.

**D. Supplemental jurisdiction**

At issue in this motion to dismiss is supplemental jurisdiction under *28 U.S.C. § 1367(a) (1990)*, which states:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. [*35] Such supplemental jurisdiction shall include claims that include the joinder or intervention of additional parties.

Because this court has dismissed the federal claims to which jurisdiction over the state law claims was supplemental, the court will decline to exercise supplemental jurisdiction pursuant to *§ 1367(c)(3)* ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -- (3) the district court has dismissed all claims over which it has original jurisdiction. . . ."). *See also Bajorat, 944 F. Supp. at 1383* ("The general rule is that when the federal claims are dismissed prior to trial, the district court should decline to exercise supplemental jurisdiction over the supplemental state law claims."). Therefore, Defendants' motion to dismiss Counts III-VI is GRANTED.

**IV. Conclusion**

For the foregoing reasons, Defendants' motions to dismiss all counts of Plaintiff's Amended Complaint is GRANTED. This case is CLOSED.

Enter:

David H. Coar

United States District Judge

Dated: September 24, 1998

# EXHIBIT B

LEXSEE 1995 US DIST LEXIS 5337

**SHERRI EWING, on behalf of herself and all others similarly situated, Plaintiff, v. TILDEN COMMERCIAL ALLIANCE, INC. and JACOBS TWIN BUICK, INC., Defendants.**

**No. 95 C 544**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1995 U.S. Dist. LEXIS 5337*

**April 19, 1995, Decided
April 21, 1995, DOCKETED**

**COUNSEL:** [*1] For SHERRI EWING, on behalf of herself and all others similarly situated, plaintiff: Cathleen C. Cohen, Daniel A. Edelman, James O. Latturner, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Danielle Renee Gomez, Rick D. Young, Edelman & Combs, Chicago, IL.

For TILDEN COMMERCIAL ALLIANCE, INC., defendant: Jeffrey H. Zegen, Neal Fellenbaum, Zegen & Fellenbaum, New York, NY. For JACOBS TWIN BUICK, INC., defendant: Francis P. Kasbohm, Gary Feiereisel, John Michael Brom, Steven R. Johnson, Fraterrigo, Best & Beranek, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge

**OPINION BY:** Suzanne B. Conlon

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Sherri Ewing filed this potential class action against Jacobs Twin Buick, Inc. ("Jacobs") alleging automobile lease disclosure violations pursuant to the Truth in Leasing Act, *15 U.S.C. § 1667 et seq.* and the Illinois Consumer Fraud Act, *815 ILCS 505/2*. [1] Ewing contends she signed a lease that contains incomprehensible termination charge disclosures, improper warranty

disclosures, and an improper limitation of appraisal rights. Ewing also alleges that the lease improperly uses multiple pages to make all required disclosures. Jacobs moves the court to abstain from deciding the case or, in the alternative, to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

> 1    Ewing originally named Tilden Commercial Alliance, Inc. ("Tilden") as a defendant. Ewing claimed that Tilden was liable for the improper disclosures because Jacobs purportedly assigned Ewing's lease to Tilden. Ewing later discovered information leading her to conclude that the lease assigned from Jacobs to Tilden is not the lease she signed and is an apparent forgery. Concluding that she had no claim against Tilden in these circumstances, *see Jensen v. Ray Kim Ford, Inc., 920 F.2d 3, 4 (7th Cir. 1990)*, Ewing dismissed Tilden from the suit.

[*2] *DISCUSSION*

**A.** *Colorado River Abstention*

Jacobs urges the court to abstain from deciding this case under the *Colorado River* abstention doctrine. *See Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817-21, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)*. Jacobs contends that Ewing's attorneys have filed an action similar to this case in Illinois state court on behalf of other plaintiffs. *See Carone v. Sun Hyundai, No. 91 L 11124 (Circuit Court of Cook County, Illinois)*. 2 Jacobs asserts that the court should dismiss Ewing's

1995 U.S. Dist. LEXIS 5337, *2

case under the abstention doctrine because *Carone* involves similar legal issues and was filed prior to Ewing's complaint.

2  Jacobs also notes that Ewing's attorneys have filed another similar action in federal court. *See Williams v. General Electric Capital Auto Leasing, 94 C 7410 (N.D. Ill.)* (Alesia, J.). Jacobs does not contend that *Williams,* another federal case, is a basis for *Colorado River* abstention. *See Colorado River, 424 U.S. at 818* (involving concurrent state and federal cases).

[*3] Under the *Colorado River* doctrine, a federal district court may decline or postpone exercise of its jurisdiction in exceptional circumstances when there is a parallel state proceeding and the abstention would promote "wise judicial administration." *Colorado River, 424 U.S. at 818; Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700 (7th Cir. 1992).* Abstention is the exception, not the rule; the Seventh Circuit recognizes a presumption against abstention. *See Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 430 (7th Cir. 1993). Colorado River* abstention is applicable in only "extraordinary" situations and constitutes a limited and narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River, 424 U.S. at 817.* A court determines whether "exceptional circumstances" justify *Colorado River* abstention by considering at least ten equitable factors. *See Caminiti & Iatarola, 962 F.2d at 701.*

Before weighing the ten factors, a court must first determine whether the concurrent state and federal actions are parallel. A federal court may not abstain [*4] under the *Colorado River* doctrine unless the concurrent state and federal actions are parallel. *La Duke v. Burlington Northern R.R., 879 F.2d 1556, 1559 (7th Cir. 1989); Fofi Hotel Co. v. Davfra Corp., 846 F. Supp. 1345, 1349 (N.D. Ill. 1994).* Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Caminiti & Iatarola, 962 F.2d at 700; La Duke, 879 F.2d at 1559; Fofi Hotel, 846 F. Supp. at 1349.* Although formal symmetry between the state and federal actions is not required, there must be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *Lumen Const., Inc. v. Brant Const. Co., 780 F.2d 691, 695 (7th Cir. 1985).*

The court cannot abstain in this case because the *Carone* action is not parallel with Ewing's suit. The parties in *Carone* are completely different from the parties in this action. The plaintiffs in *Carone* are Salvatore Carone, James Georgias, Gary Blank, Staci Beasley, and Peter Richard; the defendants in *Carone* are Sun Hyundai and General Electric Capital Auto Lease, Inc. ("GECAL"). *See* Pl. [*5] Ex. B. In contrast, the plaintiff in this action is Sherri Ewing and the defendant is Jacobs Twin Buick. Abstention is improper where the parties in the two cases are not substantially similar. *See Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984)* (abstention held improper where defendants were different); *Tolentino v. Friedman,* No. 93 C 878 (N.D. Ill. May 17, 1993) (Norgle, J.) (abstention held improper where plaintiff class different although the defendants were the same).

Despite the lack of party identity, Jacobs nevertheless contends that abstention is warranted for several reasons. First, Jacobs argues that Ewing will be a member of the plaintiff class in *Carone* and that her claims will be resolved in the context of that litigation. This is incorrect. The class in *Carone* involves a different car dealership and only includes those persons whose leases were assigned to GECAL. *See* Pl. Ex. B. The putative class in this case includes those persons who entered into leases with Jacobs and *excludes* any person whose lease was transferred to GECAL. Ewing's lease was purportedly assigned to Tilden, not GECAL. Ewing will not be a member of the [*6] *Carone* class. Second, Jacobs notes that both Ewing and the *Carone* plaintiffs challenge disclosures contained in the same automobile form lease. Jacobs urges the court to abstain because of the "fundamental similarity" between the actions and because *Carone* "would presumably" have a preclusive effect in this case. Jacobs' argument is unpersuasive. *Colorado River* abstention requires that the parties in both actions be "substantially the same." *See, e.g., La Duke, 879 F.2d at 1559.* The parties in these actions are completely dissimilar. And although the result in *Carone* might be persuasive in this action because of the similar subject matter, the lack of identity or privity between the parties in the two actions would preclude application of *res judicata* or collateral estoppel. As a result, *Carone* will not afford Ewing any relief on her claims. Finally, Jacobs asserts without elaboration that *Carone* can be modified to include Ewing and her claims. However, the fact that *Carone* could be modified is irrelevant. The issue is whether *Carone* is a parallel state proceeding as it

1995 U.S. Dist. LEXIS 5337, *6

*currently* exists. *See Crawley, 744 F.2d at 31. Carone* is [*7] not currently a parallel state proceeding.

The court finds that abstention is improper in these circumstances. Although the subject matter and legal issues in *Carone* appear to be similar to those in Ewing's case, the parties in the two actions are completely different. For this reason, the result in *Carone* will not resolve any of Ewing's federal claims, a fact that militates against abstention. *See, e.g., Lumen Const., 780 F.2d at 695.* Because the state and federal suits are not parallel (a prerequisite to abstention), the court need not weigh the *Colorado River* factors to determine whether abstention would otherwise be warranted. *See Crawley, 744 F.2d at 31.* Accordingly, Jacobs' motion to abstain is denied.

**B.** *Motion to Dismiss*

Jacobs alternatively moves to dismiss Ewing's complaint for failure to state claim. *Fed. R. Civ. P. 12(b)(6).* A motion to dismiss receives careful scrutiny and is not often granted. *See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Rothner v. Chicago, 929 F.2d 297, 302 (7th Cir. 1991).* Given the liberal requirements of federal notice pleading, dismissal is likely only where the complaint [*8] shows some bar to relief on its face. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 421 n.6 (7th Cir. 1994).* A motion to dismiss is granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley, 355 U.S. at 45-46; Arst, 25 F.3d at 421.*

Jacobs contends that Ewing's suit should be dismissed because she did not make a monthly payment under the lease attached to her complaint. Jacobs asserts that Ewing executed a second lease with Jacobs at a later date and that she made all lease payments pursuant to the terms of the second lease. Jacobs supports its assertions with an affidavit from a Jacobs representative and with a copy of the second lease that Ewing allegedly signed.

A motion to dismiss is designed to test the sufficiency of the allegations in the plaintiff's complaint. *See Kinney v. Dominick's Finer Foods, Inc., 780 F. Supp. 1178, 1182 (N.D. Ill. 1991).* The introduction of additional facts, even if relevant, is generally improper. *See id.* Rule *12(b)(6)* permits the court to treat motions to dismiss as motions for summary judgment if the defendant attaches [*9] matters outside the pleadings. However, this case is at an early stage and it appears that

discovery has not progressed significantly. The court deems it prudent to exclude the extrinsic evidence and treat Jacobs' motion as a motion to dismiss. [3]

> 3 In any event, Jacobs has not complied with the requirements of Local Rule 12(m). In addition, Ewing has today filed a declaration that she signed only one lease with Jacobs for a 1993 Mazda, and that she attached a copy of this lease to her complaint. *See Ewing Dec. PP 1, 3.*

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true. *See Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992).* Jacobs does not contend that the allegations in Ewing's complaint are insufficient to state a claim for violations of the Truth in Leasing Act. Accordingly, Jacobs' motion to dismiss the Truth in Leasing Act counts is denied.

In Count II of her complaint, Ewing alleges a violation of the Illinois Consumer [*10] Fraud Act, *815 ILCS 505/2,* based on Jacobs' allegedly incomprehensible disclosure of termination and default charges. Jacobs argues that these allegations fail to state a private cause of action under the Illinois Consumer Fraud Act. Ewing does not respond to this argument. Although a violation of the Consumer Fraud Act may occur in the absence of damages, a private cause of action does not arise unless the Act is violated *and* the plaintiff suffers damages as a result of the violation. *815 ILCS 505/10a; Tarin v. Pellonari, 253 Ill. App. 3d 542, 625 N.E.2d 739, 747-48, 192 Ill. Dec. 584 (Ill. App. 1993); Duran v. Leslie Oldsmobile, Inc., 229 Ill. App. 3d 1032, 594 N.E.2d 1355, 1361, 171 Ill. Dec. 835 (Ill. App. 1992).* Ewing does not allege that she suffered any damages as a result of the Jacobs' alleged disclosure violations. Accordingly, Ewing's claim under the Illinois Consumer Fraud Act (Count II) is dismissed without prejudice.

*CONCLUSION*

Jacobs Twin Buick's motion to dismiss the complaint is granted in part and denied in part. The motion to dismiss in favor of a prior pending state court action is denied. The motion to dismiss for failure to state a claim [*11] is granted as to Count II. Count II (Ill. Consumer Fraud Act claim) is dismissed without prejudice. Jacobs Twin Buick is directed to answer the complaint by May 1, 1995.

1995 U.S. Dist. LEXIS 5337, *11

ENTER:                                          United States District Judge

    Suzanne B. Conlon                          April 19, 1995

# EXHIBIT C

LEXSEE 2004 US DIST LEXIS 11077

**ROLLS-ROYCE PLC; ROLLS-ROYCE MOTOR CARS, LTD.; and
ROLLS-ROYCE MOTOR CARS NA, LLC, Plaintiffs, v. LUXURY MOTORS,
INC., Defendant.**

**No. 03 C 5953**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 11077; 71 U.S.P.Q.2D (BNA) 1762*

**June 16, 2004, Decided
June 17, 2004, Docketed**

**DISPOSITION:**    [*1] Defendant's Motion to Dismiss or Stay denied.

**COUNSEL:** For ROLLS-ROYCE PLC, ROLLS-ROYCE MOTOR CARS, LTD, ROLLS-ROYCE MOTOR CARS NA, LLC, plaintiffs: Richard Cartier Godfrey, John F. Hagan, Jr., Kathryn Frances Taylor, Kirkland & Ellis LLP, Chicago, IL.

For LUXURY MOTORS, INC., defendant: James Dominick O'Connell, Jacobs, Burns, Orlove, Stanton & Hernandez, Chicago, IL. Michael S. Pomerantz, Glenn L. Udell, Brown, Udell & Pomerantz, Ltd., Chicago, IL. Philip Scott Beck, Adam L. Hoeflich, Tarek Ismail, Andrew R DeVooght, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed suit against Defendant, Luxury Motors, Inc., alleging trademark infringement and false designation of origin and unfair competition in violation of the *Lanham Act*. Plaintiffs also sought a preliminary and permanent injunction against Luxury Motors' use of the Plaintiffs' trademarks. Luxury Motors seeks to dismiss or stay the action pursuant to the doctrine of primary jurisdiction or the *Colorado River* abstention doctrine.

A reading of the Complaint supports the following summary [*2] of the alleged conduct of the parties.

Rolls-Royce Motor Cars, NA ("Rolls") is the sole authorized distributor of Rolls-Royce cars in the United States and has the exclusive right and license to use and control Rolls-Royce marks for automotive use within North America pursuant to an agreement with Rolls-Royce Motor Cars, Ltd. These marks include the Rolls-Royce word mark, the "Rolls-Royce Badge," and the "Rolls-Royce Monogram." The marks are distinctive, valid, and enforceable and enjoy an exceedingly valuable reputation and goodwill in the United States not only among purchasers of their products but also among other members of the public at large.

In 1998, Rolls entered into a licensing agreement with Bentley which granted Bentley a limited license for the automotive use of Rolls-Royce marks during the life of the licensing agreement. At midnight, December 31, 2002, the licensing agreement terminated, leaving Bentley without any rights to continue to use the Rolls-Royce marks. Also, from 1998 to December 31, 2002, Bentley Motors, Ltd. produced Rolls-Royce passenger cars and distributed them in North America. During that time, none of the Plaintiffs had any ownership or affiliation [*3] with Bentley's manufacturing facilities.

2004 U.S. Dist. LEXIS 11077, *3; 71 U.S.P.Q.2D (BNA) 1762

Luxury Motors is an automobile dealer in Downers Grove, Illinois. Luxury Motors entered into a 2002 dealer agreement with Bentley through a subsidiary of Bentley. Neither Bentley nor its subsidiaries have any connection to the Plaintiffs. Luxury Motors' Dealer Agreement with Bentley, expressly stated that it would expire on December 31, 2002, unless superseded by a new dealer agreement with Bentley at an earlier date.

In early 2002, Luxury Motors submitted a proposal to Rolls seeking to become an authorized Rolls-Royce dealer once Rolls-Royce Motor Cars, Ltd. began producing the redesigned Rolls-Royce Phantom for distribution in the United States. Rolls did not accept Luxury Motors' proposal and did not select Luxury Motors to be an authorized dealer of Rolls-Royce Motor Cars.

In February 2003, Luxury Motors filed a complaint with the Illinois Motor Vehicle Review Board ("IMVRB"), seeking to have Rolls tender a franchise renewal or otherwise comply with the parties' franchise agreement. The complaint alleged that Rolls-Royce violated the *Illinois Motor Vehicle Franchise Act* ("IMVFA") by failing to tender a renewal of the franchise agreement [*4] without Luxury Motors' receiving a formal notice of termination or nonrenewal. This complaint remains pending before the IMVRB.

In March 2003, counsel for Luxury Motors received written notice from Rolls that Bentley, and consequently Luxury Motors, had no rights to use the Rolls-Royce marks. Notwithstanding that notice, Luxury Motors continued to use the Rolls-Royce mark and hold itself out as an authorized Rolls-Royce passenger car dealership.

On August 22, 2003, Plaintiffs filed the instant Complaint. On October 28, 2003, the Court entered the parties' Agreed Preliminary Injunction Order which enjoined Luxury Motors from using or affixing Plaintiffs' trademarks and holding itself out to customers that it was an authorized Rolls-Royce dealer.

Luxury Motors argues that the present case should be stayed pursuant to the doctrine of primary jurisdiction.

The doctrine of primary jurisdiction is actually two doctrines. *See Arsberry v. Illinois, 244 F.3d 558, 563 (7th Cir. 2001) (Arsberry)*. In its original form, the doctrine applies only when an issue arises that is within the exclusive original jurisdiction of the regulatory agency,

although the agency's resolution [*5] of the issue will usually be subject to judicial review. *See Arsberry, 244 F.3d at 563*. In such a situation, the suit is stayed and the issue is decided by the agency. Once the agency decides this exclusive issue, the suit may proceed. *See Arsberry, 244 F.3d at 563*.

Here, Luxury Motors has alleged before the IMVRB that because Luxury Motors was not provided notice of termination of the franchise agreement, as required by the IMVRA, the franchise agreement remains in effect. The issue of whether the Defendants failed to comply with the IMVFA is not within the exclusive jurisdiction of the IMVRB. *See 815 ILCS 710 et seq*. Accordingly, Luxury Motors' IMVFA claim does not fall within the primary jurisdiction doctrine in its original form.

The primary jurisdiction doctrine has also been defined as a doctrine that allows a court to refer an issue to an agency that has specialized knowledge about the issue, even if the agency has not been given exclusive jurisdiction to resolve that issue. *See Arsberry, 244 F.3d at 563*.

Luxury Motors argues that the IMVRB has specialized knowledge and expertise regarding automobile dealership agreements [*6] and governing law and that, thus, the instant action should be stayed so that the IMVRB may decide the IMVFA issue. However, Luxury Motors fails to provide any support for this assertion. To the contrary, claims relating to the IMVFA have been decided by the District Courts without the need for input from the IMVRB. *See, e.g, Servpro Indus., Inc. v. Schmidt, 1997 U.S. Dist. LEXIS 4013, 1997 WL 158316 (N.D. Ill. March 31, 1997); Chrysler Credit Corp. v. Anthony Dodge, Inc., 1996 U.S. Dist. LEXIS 12918, 1996 WL 509888 (N.D. Ill. Sept. 4, 1996); Northwestern Buick, Inc. v. Nissan Motor Corp. in the U.S.A., 1990 U.S. Dist. LEXIS 3462, 1990 WL 43316 (N.D. Ill. March 29, 1990)*.

Based on the above, Luxury Motors has failed to demonstrate that the present action should be stayed pursuant to the primary jurisdiction doctrine.

Luxury Motors also argues that the present action should be stayed pursuant to the *Colorado River* abstention doctrine.

Although federal courts may stay and wait a decision of parallel proceedings as a matter of wise judicial

Page 3

2004 U.S. Dist. LEXIS 11077, *6; 71 U.S.P.Q.2D (BNA) 1762

administration, any such stay should only be granted in exceptional cases. *See Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999)* [*7] (*Finova*). To determine if abstention is appropriate, the Court must first determine if the two pending actions are in fact parallel. *See Finova, 180 F.3d at 898.* Actions are parallel if substantially the same parties are litigating substantially the same issues at the same time in two venues. *See Finova, 180 F.3d at 898.* If the actions are parallel, the Court then weighs ten factors to determine whether a stay is appropriate. These factors include: (1) whether the state court has assumed jurisdiction over the property at issue; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the actions; (8) the presence or absence of concurrent jurisdiction; (9) whether the state court action is removable; and (10) whether the federal action was filed for vexatious or contrived purposes. *See Finova, 180 F.3d at 898; Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7, 125 F.3d 546, 550 (7th Cir. 1997)* [*8] (*Sverdrup*). In balancing the ten factors, "particular weight must be given to the presence of a federal question in the case." *Sverdrup, 125 F.3d at 549.*

Here, the two pending actions include Luxury Motors' claim that Rolls-Royce Motor Cars NA violated the IMVFA and Plaintiffs' trademark claims under the Lanham Act. Luxury Motors' improper termination claim under the IMVFA is only one of numerous defenses that Luxury Motors may raise in an attempt to avoid liability. Furthermore, Luxury Motors' "improper franchise termination" defense is unlikely to be found to be a defense at all against Plaintiffs' claims of infringement under the Lanham Act. *See The Great American Chocolate Cookie Co. v. River Valley Cookies, Inc., 970 F.2d 273, 282 (7th Cir. 1992)* (franchisee should not have infringed trademark but should have sued for breach of contract); *Gorenstein Enters., Inc. v. Quality Care-USA,*

*Inc., 874 F.2d 431, 435 (7th Cir. 1989)* (dispute regarding franchise termination did not affect Lanham Act analysis); *Jake Flowers, Inc. v. Kaiser, 2002 U.S. Dist. LEXIS 24929, 2002 WL 31906688 (N.D. Ill. Dec. 31, 2002)* (continued use of trademark after franchise [*9] is terminated is not allowed -- franchisee may seek other damages it may suffer from franchisor's unlawful action but cannot continue to use the trademark). Accordingly, the parties are not litigating substantially the same issues at the same time in two venues.

Furthermore, the ten factors to be reviewed by the Court fail to demonstrate that an exceptional case exists to warrant abstention. The first factor is not applicable as no real or tangible property is at issue. The federal forum does not present an inconvenience as both proceedings are taking place in Chicago, Illinois. There is little, to no, risk of piecemeal litigation because, as discussed above, Luxury Motors' wrongful termination defense is unlikely to affect the trademark infringement claims and because any risk may be avoided by the adjudication of all issues in this Court. While Luxury Motors' claim was filed first, the Plaintiffs' federal claims weigh heavily against abstention. The parties concede that neither action is much further along than the other. While this Court and the IMVRB have concurrent jurisdiction over Luxury Motors' one claim, only this Court has jurisdiction over all other issues. Lastly, while [*10] Luxury Motors' claim is not removable, Luxury Motors fails to demonstrate that Plaintiffs brought their action for vexatious or contrived purposes. The above review of the factors demonstrates that abstention is not appropriate in the instant case.

For the foregoing reasons, Luxury Motors' Motion to Dismiss or Stay is denied.

Dated: June 16, 2004

JOHN W. DARRAH

United States District Judge

# EXHIBIT D

LEXSEE 2003 US DIST LEXIS 9089

**ENFRA LLC and COMPASS ENVIRONMENTAL, INC., Plaintiffs, v. RICK CAPORALE, Defendant.**

**No. 02 C 8856**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2003 U.S. Dist. LEXIS 9089*

**May 15, 2003, Decided
May 30, 2003, Docketed**

**DISPOSITION:**    [*1] Defendant's motion to stay denied.

**COUNSEL:** For ENFRA LLC, COMPASS ENVIRONMENTAL, INC., plaintiffs: James David Roberts, Catherine M. Burkhardt, Piper Rudnick, Chicago, IL.

For RICK CAPORALE, defendant: Glen E. Amundsen, Mari Ann Novy, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINION BY:** Robert W. Gettleman

**OPINION**

*MEMORANDUM OPINION AND ORDER*

On December 9, 2002, plaintiffs Enfra LLC ("Enfra") and Compass Environmental, Inc. ("Compass") filed a six-count complaint against defendant Rick Caporale arising from acts allegedly committed by him during his tenure as Enfra's Chief Executive Officer ("CEO"). In their complaint, plaintiffs assert state law claims for breach of contract, breach of fiduciary duty, and fraud, as well as claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1961 et seq.*, and the Federal Declaratory Judgment Act, *28 U.S.C. § 2201*. Defendant moved to stay the instant action pursuant to *Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)*, [*2] in favor of a lawsuit that he brought against plaintiffs in California state court on October 29, 2002. For the reasons stated herein, defendant's motion is denied.

*FACTS*

Enfra is an Illinois limited liability company with its principal place of business in Brea, California, and Compass is an Indiana corporation with its principal place of business in Chicago, Illinois. Defendant resides in California and served as Enfra's CEO from September 2001 through October 2002.

According to plaintiffs' complaint, defendant approached Compass with a proposal to form an entity that would remediate environmentally distressed properties and develop and market products for use in connection with such properties. To this end, on September 5, 2001, defendant, Compass, and Henry Richter (the "Members") formed Enfra, and Enfra and defendant entered into an Employment Agreement through which defendant would serve as Enfra's CEO on the terms set forth therein. The Employment Agreement provides that defendant could be terminated for "cause," which is defined as "conduct which is dishonorable, illegal, unethical or unprofessional." The Employment Agreement further provides that it shall be governed [*3] by and construed in accordance with Illinois law.

On September 6, 2001, the Members executed Enfra's Operating Agreement, which sets forth the rights

and obligations of the Members with respect to Enfra. The Operating Agreement provides that it, the affairs of Enfra, and the rights and obligations of the Members are to be governed by Illinois law, and that "any action, suit, proceeding or counterclaim of any kind directly or indirectly arising out of or related to [the Operating Agreement] will be litigated in courts having situs in Chicago, Illinois."

Plaintiffs' complaint alleges that, during his tenure as CEO, defendant engaged in "dishonorable, illegal, unethical and unprofessional conduct." For example, according to plaintiffs, defendant caused Enfra to purchase 290 gallons of a product called Bacto-Zyme for resale to Enfra customers. Plaintiffs allege that defendant remitted customers' subsequent payments for the Bacto-Zyme products to The Charbon Group - a company that is 40%-owned by defendant - at defendant's home address, rather than to Enfra. Plaintiffs also allege that defendant made misrepresentations to Enfra's managers regarding the number of states licensed to distribute [*4] a product known as Perma-Zyme, thereby inducing Enfra to enter into a licensing agreement to distribute Perma-Zyme. Plaintiffs' complaint further alleges that defendant charged personal expenses to Enfra, violated managers' directives for personal gain, and directed a "donation" of $ 14,000 worth of Perma-Zyme to The Charbon Group without the approval or knowledge of Enfra's other managers.

On October 23, 2002, Compass sent a letter to defendant requesting his resignation. Rather than resigning, on October 29, 2002, defendant filed suit against Enfra, Compass, and Compass' principal, Jonathon Markoff, in the Superior Court of Orange County, California (the "California suit"), claiming constructive termination of the Employment Agreement. The complaint in the California suit alleged that the "causes of action herein do not arise out of the terms and conditions of the Operating Agreement." On October 31, 2002, defendant resigned as Enfra's CEO.

Plaintiffs filed the instant action on December 9, 2002, asserting six claims: (1) seeking a declaration that Enfra is entitled to terminate the Employment Agreement for cause based on defendant's dishonorable, illegal, unethical and unprofessional [*5] conduct as CEO; (2) seeking a declaration that neither Enfra nor Compass has any liability to defendant under the Operating Agreement; (3) breach of contract; (4) breach of fiduciary

duty; (5) fraud arising out of defendant's alleged misrepresentations regarding Perma-Zyme; and (6) civil RICO based on a conspiracy between defendant and The Charbon Group to "illegally divert monies and business from Enfra customers to The Charbon Group."

On January 7, 2003, [1] Enfra presented a motion in the California court to dismiss or stay the California suit based on the forum selection clause in the Operating Agreement, arguing that Caporale's claims in the California suit arose directly or indirectly out of, and were thus related to, the Operating Agreement. In response, defendant argued that he "does not assert any claim arising out of or related in anyway [sic] to the Operating Agreement." On January 8, 2002, the California court denied the motion, holding that public policy of the State of California allowed Caporale to pursue his claims based exclusively on the Employment Agreement in California courts.

> 1 The plaintiffs' motion to dismiss or stay the California suit was file-stamped on December 9, 2002, the same day that the instant suit was initiated.

[*6] On January 21, 2003, defendant filed a motion to stay the instant suit under the abstention doctrine announced in *Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)*. As of the date of the instant motion, the parties had engaged in discovery in the California suit, including interrogatories, requests for documents, and notices of deposition. With this background in mind, the court turns to the legal standards governing the instant motion.

### DISCUSSION

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR International, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001)*, quoting *Colorado River, 424 U.S. at 817*. Nonetheless, animated by concerns about "wise judicial administration" and "conservation of judicial resources," in *Colorado River*, the Supreme Court held that under "limited" and "exceptional" circumstances, a federal district court may stay or dismiss [2] an action when there is an ongoing parallel action in state court. *Id. at 818; La Duke v. Burlington Northern Railroad Company, 879 F.2d 1556, 1558 (7th Cir. 1989)*. [*7]

2003 U.S. Dist. LEXIS 9089, *7

2    The Seventh Circuit has held that a stay, instead of a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. *J & A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 U.S. Dist. LEXIS 6979, 2002 WL 653897, at \*2 (N.D.Ill. April 19, 2002),* citing *Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988).*

As the Seventh Circuit noted in *Lumen Construction, Inc. v. Brant Construction Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985),* "a federal court cannot lightly abjure its responsibility to assert jurisdiction." Thus, "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." (Internal citations omitted.) *AAR International, Inc., 250 F.3d at 518.*

To determine whether *Colorado River* abstention is appropriate, a court must first address whether the state and federal actions [\*8] are parallel. *AAR International, Inc., 250 F.3d at 518.* If the actions are parallel, the court then considers the factors articulated in *Colorado River* and its progeny to determine whether exceptional circumstances exist warranting abstention. *AAR International, Inc., 250 F.3d at 518.*

Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id.* A court asks not whether the suits are "formally symmetrical" or identical, but rather whether there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" *Id.,* quoting *Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988).*

Notwithstanding defendant's arguments to the contrary, the court is not persuaded that the instant action and the California suit are parallel. To begin, at least two of the claims in the instant suit - Counts II and V - specifically rely on the Operating Agreement. In contrast, in both his complaint in the California suit as well as his response to plaintiffs' motion to stay or dismiss that suit, defendant maintained that the claims [\*9] in the California suit are unrelated to the Operating Agreement, presumably to avoid the forum selection clause contained therein. Thus, defendant's own characterization of the

California suit belies his argument that the two suits are parallel.

Moreover, Count VI, which seeks damages under civil RICO, is a claim that will not necessarily be disposed of in the California suit, notwithstanding the likelihood that the predicate acts contemplated by the RICO claim will be raised as a defense to the California suit. For example, it is conceivable that plaintiffs could successfully defend the California suit on the basis of the alleged predicate acts, and yet fail to prevail on their civil RICO claim in the instant suit. [3] Thus, the court concludes that the California suit and the instant suit are not parallel.

>    3    Curiously, neither party acknowledges that to prevail on a civil RICO claim, plaintiffs must do more than simply demonstrate that defendant engaged in the alleged predicate acts. *See, e.g., Williams Elec. Games, Inc. v. Barry, 2001 U.S. Dist. LEXIS 16412, 2001 WL 1104619, at \* 1-3 (N.D.Ill. Sept. 18, 2001)* (denying the defendant's motion for summary judgment because disputed issues of fact existed with respect to, (1) whether a RICO "enterprise" existed, and (2) whether a "pattern of racketeering activity" was present).

[\*10]    Even if the court concluded otherwise, abstention would not be warranted in the instant case. Assuming *arguendo* that the California suit and instant suit are parallel, exceptional circumstances do not exist to justify staying the instant dispute. In *Lumen, 780 F.2d at 694-695,* the Seventh Circuit articulated the following ten factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts under *Colorado River:* (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

"The decision to abstain is based on an assessment of the totality of the circumstances." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 900 (7th*

2003 U.S. Dist. LEXIS 9089, *10

*Cir. 1999).* [*11] Thus, the district court's decision whether to abstain should not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand. *La Duke, 879 F.2d at 1559,* citing *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 16, 103 S. Ct. 927, 942, 74 L. Ed. 2d 765 (1983).*

The first and last factors are not applicable to the instant dispute. No property is at issue in the California suit, and there is no evidence that the federal claim is vexatious or contrived. To the contrary, the forum selection clause in the Operating Agreement mandates that all claims and counterclaims arising from that agreement be brought in a court in Chicago, Illinois.

Given the forum selection clause contained within the Operating Agreement, defendant cannot credibly claim that Chicago is an inconvenient forum. *See Finova Capital Corp., 180 F.3d at 899* (since Illinois was expressly selected as an acceptable forum for the resolution of disputes, "neither side can credibly claim that it [*12] is being forced to litigate in an inconvenient forum."). Thus, the second factor disfavors abstention.

The desire to avoid piecemeal litigation favors abstention. Arguably, plaintiffs' defense of the California suit will implicate many of the factual allegations underlying its Operating Agreement claims in the instant suit. Thus, the California and federal suits do overlap and involve similar issues. Nonetheless, a complete resolution of the state action will not necessarily dispose of plaintiffs' civil RICO claim. Moreover, as noted in *Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982),* "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy—in having two active lawsuits instead of one." Accordingly, although this factor does favor abstention, the court's inquiry does not end here. *See AXA Corporate Solutions v. Underwriters Reinsurance Co., 2002 U.S. Dist. LEXIS 19407, 2002 WL 31260009, at *9* ("Piecemeal litigation, in and of itself, can hardly be called 'exceptional circumstances.'").

The fifth factor, source of governing law, disfavors abstention. Setting aside the fact that the Operating [*13] Agreement and the Employment Agreement provide for the application of Illinois law, and assuming that the California state court is capable of applying Illinois law to the parties' contract claims, Count VI of plaintiffs'

claim is brought under civil RICO, which is governed by federal law. This is balanced by the sixth and eighth factors, however, because the parties do not dispute that the state court could exercise jurisdiction over plaintiffs' civil RICO claim if plaintiffs chose to assert that claim in the California suit. *See, e.g., Tafflin v. Levitt, 493 U.S. 455, 467, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990)* (holding that state courts have concurrent jurisdiction to consider civil claims arising under RICO).

The seventh factor, the relative progress of the two lawsuits, does not favor abstention. Although discovery has begun in the California suit, there is no evidence that the California suit is nearing resolution or that there are any pending or imminent dispositive motions. Defendant's reliance on *Norris v. Miller, 926 F. Supp. 776, 779 (N.D.Ill. 1996),* is thus misplaced. Moreover, under *Fed. R. Civ. P. 26(a)(1),* the parties should already [*14] have exchanged initial discovery material in the instant case.

Contrary to defendant's representation in his motion, the ninth factor, availability of removal, also disfavors abstention. The parties in the California suit do not have complete diversity, since Enfra and defendant are both California residents, and thus the California suit is not removable to federal court. As a result, if the instant case is stayed, plaintiffs will be precluded from adjudicating their claims in a federal forum. *See J&A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 U.S. Dist. LEXIS 6979, 2002 WL 653897 (N.D.Ill. 2002).* Moreover, the forum selection clause contained in the Operating Agreement prevents plaintiffs from raising counterclaims premised on the Operating Agreement in a non-Chicago forum, which further mitigates against granting a stay of the instant case.

Only one of the ten factors outlined above clearly favors abstention in the instant case: the order in which jurisdiction was obtained. As noted above, the California suit was filed in October 2002, whereas the instant suit was filed in December 2002. When considered in light of the seventh factor, which examines the relative progress of the two [*15] suits, however, this relatively short time differential carries little weight. *See also Finova Capital Corp., 180 F.3d at 900* (fact that state action was filed four months before federal action did not support abstention).

According to the Seventh Circuit, "If there is any substantial doubt that the parallel litigation will be 'an

adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR International, Inc., 250 F.3d at 518*, quoting *Moses H. Cone, 460 U.S. at 28*. As discussed above, because plaintiffs have asserted claims in the instant case arising solely under the Operating Agreement that defendant denies are related in any way to his claims in the California suit, as well as a RICO claim that involves matters unrelated to the Employment Agreement involved in the California suit, the resolution of the California suit will not necessarily resolve all of the claims and issues before this court. The court thus

concludes that abstention is not warranted in the instant [*16] case.

### CONCLUSION

For the reasons stated herein, defendant's motion to stay the instant suit is denied.

**ENTER: May 15, 2003**

**Robert W. Gettleman**

**United States District Judge**